UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
SUSAN CONDIT and BRAD CONDIT, as legal guardians for
W.C. and in their individual capacities,

                                    Plaintiffs,

                - against -

BEDFORD CENTRAL SCHOOL DISTRICT, MT. KISCO
ELEMENTARY SCHOOL, JERE HOCHMAN, SUSAN
OSTROFSKY, KWEON STAMBAUGH, BEVERLY
DESUZA, PAULA FRIEDMAN, HELEN TEDESCO,
LAURIE BAUER, MARGARET BARNACLE, DAVID GEE,
MELANIE GILBERT, STEPHANIE ROEBUCK, KEANE &
BEAN, PC,

                                    Defendants.
--------------------------------------------------------------------x

**OPINION AND ORDER**

No. 16-CV-6566 (CS)

Appearances:
Anthony M. Giordano
Ossining, New York
*Counsel for Plaintiffs*

Judson K. Siebert
Keane & Beane, P.C.
White Plains, New York
*Counsel for Keane & Beane Defendants*

Lewis R. Silverman
Karen C. Rudnicki
Silverman & Associates
White Plains, New York
*Counsel for District Defendants*

Seibel, J.

        Before the Court are the motions to dismiss of Defendants Bedford Central School

District ("District"), Mount Kisco Elementary School ("School"), and District employees

Margaret Barnacle, Laurie Bauer, Beverly Desuza, Paula Friedman, David Gee, Melanie Gilbert,

Jere Hochman, Susan Ostrofsky, Kweon Stambaugh, and Helen Tedesco's (the "District

1

Defendants"), (Doc. 17), and of Keane & Beane, P.C. ("K&B")[1] and Stephanie Roebuck, a lawyer at K&B (the "K&B Defendants"), (Doc. 25).

## I. __BACKGROUND__

I accept as true the facts, but not the conclusions, set forth in Plaintiffs' First Amended Complaint. (Doc. 12 ("AC").)

### A. Facts

Plaintiffs are W.C., a minor, and his parents, Susan and Brad Condit ("Plaintiff Parents"). (*Id.* ¶ 21.) W.C. is diagnosed with Attention Deficit Hyperactivity Disorder, Dyslexia, Expressive Language Disorder, Irritable Bowel Syndrome, and Post Traumatic Stress Disorder. (*Id.* ¶ 22.) W.C. had an Individualized Education Program ("IEP") that provided, among other things, special assistance from his teachers. (*Id.* ¶ 24.) In September 2012, W.C. entered the fifth grade at Mt. Kisco Elementary School, at which point he began experiencing bullying and harassment from a student in his class, L.C., who suffered from learning and psychological disabilities. (*Id.* ¶¶ 23, 26.) For example, L.C. would leave her seat, approach W.C., touch him in various places, push him, place her face directly in front of his and stare at him, all of which resulted in W.C.'s anxiety and distraction from schoolwork. (*Id.* ¶ 27.) Plaintiff Parents allege that even though these activities were occurring "on a daily basis," they were "wholly ignored" by W.C.'s teacher, Beverly Desuza, (*id.* ¶ 26), and although they made numerous complaints about L.C. to the School and the District by phone, letter, appointments, and email, "little or nothing [was done] to address the situation," (*id.* ¶ 30).

As an apparent result of this prolonged harassment and bullying, Plaintiff Parents increased W.C.'s anxiety medication under medical supervision in March 2013. (*Id.* ¶ 31.) Later

---

[1] Plaintiffs incorrectly named K&B as "Keane & Bean, PC." (Doc. 12; *see* Doc. 1 ¶ 1.)

that month, W.C. suffered a seizure brought on by the increase in his medication, had to be revived after he stopped breathing, and was hospitalized for four days. (*Id.* ¶¶ 32-33.) After W.C. returned to school, "he reported no changes implemented to protect him from bullying and harassment from" L.C., which continued. (*Id.* ¶¶ 34-35.) In April 2013, frustrated by the District's inaction, Plaintiff Parents filed a report with the local police regarding L.C. and the alleged failure of the District Defendants to protect their son. (*Id.* ¶ 37.)

On April 11, 2013, Roebuck sent a letter to Plaintiff Parents in her role as legal counsel for the District. (*Id.* ¶ 38; Doc. 33 ("Roebuck Decl.") Ex. B ("Letter").)[2] Plaintiffs claim that the letter "falsely accuse[d] them of abusive threatening behavior towards the" District Defendants, was sent in "retaliation for exercising their right to petition their government by filing a police report," and "threatened plaintiff guardians with criminal prosecution." (AC ¶¶ 38-40.) Plaintiffs further contend that the Letter "sought to justify [the District's] improper and unconstitutional retaliatory action by falsely claiming that plaintiff guardians [*sic*] exercise of speech constituted behavior that violated the 'District Code of Conduct' and the 'Board's harassment policies regarding employee harassment,' . . . without citing any specific behavior or speech in support of this claim." (*Id.* ¶ 41.)

The Letter itself states that "[t]he District comes to this point for one reason and one reason only – your behavior towards the staff." (Letter at 1.) Roebuck opines that Plaintiff Parents "crossed the line with" several specified written communications sent in March and April of 2013, and directs that in the future, "should [they] wish to communicate with" the

---

[2] While Plaintiffs did not attach the April 11, 2013 letter to their AC, the K&B Defendants attached the letter – which I may properly consider on this motion, as I will discuss shortly – to their motion to dismiss. I need not take as true any allegations regarding the contents of the letter that are contradicted by the actual letter. *See MBIA Inc. v. Certain Underwriters at Lloyd's*, 33 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) ("Allegations in the complaint that are 'contradicted by more specific allegations or documentary evidence' are not entitled to a presumption of truthfulness.") (quoting *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 175 n.1 (2d Cir. 2013)).

District staff, they "must send a written communication through [K&B's] office . . . [and that Roebuck] will send the District's response after consultation with the appropriate staff." (*Id.* at 2.) The Letter also restricted Plaintiffs Parents' access to the School, stating that they would "not be allowed onto any . . . District property, except in limited circumstances." (*Id.*) It enumerated the circumstances (including, among other things, drop-off and the spring concert) and provided that "the District will accommodate any public event after school hours your sons participate in that other parents are invited to attend not mentioned . . . above," stating that "[a]s these events arise, [Roebuck] will contact you in writing regarding how your presence will be arranged." (*Id.* at 3.) The Letter makes reference to the police incident report filed earlier that month, but states that "the District welcomes any and all third party review of the actions it has taken regarding [W.C.] and his education." (*Id.*) Finally, the Letter informed Plaintiff Parents that L.C. "w[ould] not be removed from W.C.'s class, nor will changes be made to her IEP, unless her own education progress calls for same." (*Id.* at 4.)

Plaintiffs allege that K&B never contacted them to inform them of events at the school involving other parents or to provide any guidance as to how their presence would be arranged, resulting in their being barred from attending every school event involving W.C. and their other son for a period of twenty-seven months. (AC ¶ 43.) As a consequence, they allege that they were denied their constitutional rights to protect W.C. from abusive behavior occurring in a public classroom, (*id.* ¶ 50), to control the upbringing of W.C. free from abuse, (*id.* ¶ 51), and to participate in their son's education, (*id.* ¶ 52), and were denied "information essential to their constitutional rights as parents to participate in their son's education," (*id.* ¶ 54; *see id.* ¶ 53).

On May 23, 2013, Plaintiff Parents went to the School to vote in a public election. (*Id.* ¶ 46.) As they approached the School, security guards stopped them, ordered them off the

premises, escorted them from School property without having had the opportunity to vote, and threatened them with arrest should they return. (*Id.* ¶ 47.) K&B informed Plaintiff Parents later that day that they were allowed to return to vote, but Plaintiff Parents chose not to do so for fear that it was a ploy to have them arrested. (*Id.* ¶ 49.)

Plaintiffs bring four claims, including: (1) a claim under 42 U.S.C. § 1983 for First Amendment retaliation and violations of the Fourteenth Amendment resulting in denial of voting rights; (2) a § 1983 claim for due process violations for denying Plaintiff Parents a "right to contest or appeal the punitive sanctions imposed against them" under the Fourteenth Amendment; (3) § 1983 claim for retaliation resulting in disparate treatment under the First and Fourteenth Amendments; and (4) a violation of W.C.'s constitutional right to an equal education by the failure to protect him.

### B.     Procedural History

Plaintiffs filed a summons and notice in Westchester County Supreme Court on May 20, 2016. (Doc. 1 Ex. A.) Defendants were served with the summons and notice on or around July 28, 2016, (Doc. 1 ¶ 5), and removed the case to this Court on August 18, 2016, (*see id.* at 4). Plaintiffs filed a Complaint in this Court on October 27, 2016, (Doc. 8), and an Amended Complaint on December 7, 2015, (Doc. 12), but the docket does not reflect that either was served on any of the Defendants. Both sets of Defendants filed the instant motions on March 22, 2017. (Docs. 17, 25.)

The District Defendants argue that (1) the claims are time-barred and the continuing violation doctrine does not apply, (2) Plaintiffs fail to state a First Amendment retaliation claim because their speech was not chilled and they fail to allege disparate treatment, (3) Plaintiffs fail to state a due process claim, (4) Plaintiffs fail to allege a custom, policy, or practice that would

support a *Monell* claim, (5) Plaintiffs fail to allege that the individual Defendants were

personally involved, (6) Plaintiffs fail to exhaust administrative remedies for the "failure to

protect" claim, which Defendants contend is more akin to an IDEA claim, (7) Plaintiffs should

have appealed the Letter pursuant to New York State law, and (8) Defendants are entitled to

qualified immunity. (*See generally* Doc. 19 ("Dist. Ds' Mem.").) The District Defendants also

contend in a footnote that the Court lacks personal jurisdiction and move to dismiss under

Federal Rule of Civil Procedure 12(b)(2) because Plaintiffs did not properly serve the initiating

documents on the individual Defendants. (*Id.* at 11 n.2.) The K&B Defendants make similar

arguments and join the District Defendants' motion, (Doc. 26 ("K&B Ds' Mem.") at 6), but add

that they are not state actors under § 1983, (*id.* at 11-16). Plaintiffs respond, in essence, that they

properly pleaded each of their claims, that the continuing violation doctrine applies, and that the

K&B Defendants are state actors under a conspiracy/joint liability theory. (*See generally* Doc.

22 ("Ps' Dist. Opp."); Doc. 37 ("Ps' K&B Opp.").)

## II.     DISCUSSION

### A.     Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Documents Properly Considered

When deciding a motion to dismiss, a court is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted).  To be incorporated by reference, the complaint must make "a clear, definite and substantial reference to the documents."  *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks omitted).  "A document is integral to the complaint

where the complaint relies heavily upon its terms and effect. Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotation[s] from the document is not enough." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (alteration in original) (internal quotation marks and citation omitted).

The District Defendants, the K&B Defendants, and Plaintiffs each attached documents to their motion papers. The District Defendants attached three exhibits: (1) Plaintiffs' Amended Complaint, (2) a June 5, 2015 letter from Jere Hochman, the District's Superintendent, (AC ¶ 7), to Plaintiff Parents, and (3) Decision No. 14,829 of the Commissioner of Education. (*See* Doc. 18 ("Silverman Decl.") Exs. A-C.) The K&B Defendants attached five exhibits: (1) Plaintiffs' Amended Complaint, (2) the April 11, 2013 Letter from Roebuck to Plaintiff Parents, (3) the written communications from Plaintiff Parents to which the Letter refers, (4) the District's Code of Conduct, and (5) an email dated May 21, 2013 from Roebuck to Plaintiff Parents regarding their ability to return to school to vote. (*See* Roebuck Decl. Exs. A-E.) Finally, Plaintiffs attached the same five exhibits to each of their opposition motions: (1) emails between Plaintiff Parents and Defendants discussing W.C., (2) additional emails between Plaintiff Parents and Defendants discussing W.C., (3) a letter from Hochman to Plaintiff Parents dated March 1, 2013 regarding W.C.'s attendance, (4) a letter from Plaintiff Parents to Hochman dated April 7, 2013 regarding W.C.'s attendance and Plaintiff Parents' demands moving forward, and (5) the New York State Education Department's Procedural Safeguards Notice dated July 2013. (*See* Doc. 38 ("Giordano Decl.") Exs. A-E.)

First, the April 11, 2013 Letter, attached as Exhibit B to the Roebuck Declaration, may be considered on this motion because it forms the basis for Plaintiffs' claims, and is discussed at length, rendering it integral to the Amended Complaint. (*See, e.g.*, AC ¶¶ 38-42, 50-55, 57, 61-

62, 64-67.)

Second, "material that is a matter of public record may be considered in a motion to dismiss," *Byrd v. City of N.Y.*, No. 04-CV-1396, 2005 WL 1349876, at *1 (2d Cir. June 8, 2005), and thus the Decision No. 14,829 of the Commission of Education,[3] the District's Code of Conduct,[4] and the New York State Education Department's Procedural Safeguards Notice[5] may be considered on this motion.

 With the exception of the Amended Complaint, the remaining documents may not be considered on this motion. The May 23, 2013 email from Roebuck to Plaintiff Parents, attached as Exhibit E to the Roebuck Declaration, may be the communication mentioned once in passing in the Amended Complaint, (*see* AC ¶ 49), but even assuming it is, "[m]erely mentioning a document in the complaint" will not suffice to render it "integral," *Goel*, 820 F.3d at 559. The other correspondence between Plaintiff Parents and District employees submitted by both parties is not integral to or referenced in the Amended Complaint, even if some of it is mentioned in the Letter. Accordingly, the Court may not consider Exhibit B to the Silverman Declaration, Exhibits C or E to the Roebuck Declaration, or Exhibits A-D to the Giordano Declaration.

## C. Personal Service

The District Defendants state in a footnote, without further discussion, that "personal service of the initiating documents has not been effectuated upon the individual [D]efendants," which would divest this Court of personal jurisdiction over the individually named parties and

---

[3] *Oliver ex rel. C.O. v. Bd. of Educ. of Bay Shore Union Free Sch. Dist.*, N.Y.S. Educ. Dep't, No. 14,829 (Jan. 9, 2003).

[4] Bedford Cent. Sch. Dist., 5300 Code of Conduct, http://www.bcsdny.org/Page/1674 (last visited Oct. 16, 2017).

[5] N.Y.S. Educ. Dep't, Procedural Safeguards Notice, Rights for Parents and Children with Disabilities, Ages 3-21 (July 2013), http://www.p12.nysed.gov/specialed/formsnotices/psgn/PSGN-July2013.pdf.

require dismissal of all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(2). (Dist. Ds' Mem. at 11 n.2.)[6]

A Court must "dismiss an action against a defendant over which it has no personal jurisdiction upon motion by that defendant." *Stone v. Ranbaxy Pharm., Inc.*, No. 10-CV-8816, 2011 WL 2462654, at *1 (S.D.N.Y. June 16, 2011) (internal quotation marks omitted). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Dynegy Midstream Servs., LP v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (internal quotation marks omitted). The Federal Rules of Civil Procedure dictate that "[a] summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service." Fed. R. Civ. P. 4(c)(1). The New York Civil Practice Law and Rules ("C.P.L.R.") states that "[t]he complaint may be served with the summons," and if the summons is served without the complaint, "the defendant may serve a written demand for the complaint." N.Y. C.P.L.R. §§ 3012(a), (b). In that event, the complaint must be served on Defendants within twenty days. *Id*. § 3012(b). "If service of process was not sufficient, the Court has discretion to dismiss the action, but dismissal is not mandatory," in that a court may grant a plaintiff leave to properly serve the defendants. *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002).

The District Defendants correctly point out that Plaintiffs failed to respond to their argument regarding insufficient service of process, (Doc. 23 at 9), and thus apparently concede the point. In any event, the docket in the state court action, *Condit et al. v. Bedford Cent. Sch.*

---

[6] Generally, when defendants move to dismiss on the basis of improper service of process, they move under Federal Rule of Civil Procedure 12(b)(5). *See generally Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246 (S.D.N.Y. 2003). But because improper service of process divests a Court of personal jurisdiction, as discussed below, the defense may be raised under Federal Rule of Civil Procedure 12(b)(2).

*Dist. et al.*, No. 57203/2016 (Sup. Ct. Westchester Cty. May 20, 2015),

https://iapps.courts.state.ny.us/nyscef/DocumentList?docketId=5jnrLdGJhU2b_PLUS_OcpQUQ

ZfQ==&display=all&courtType=Westchester County Supreme Court, does not reflect that the

Summons with Notice was served on any of the Defendants.[7]  Similarly, no affidavits of service

of the Summons or the subsequently filed Complaint and Amended Complaint have been filed

on the docket in this Court, and Plaintiffs have pointed to no evidence of service otherwise.

"When a defendant raises a Rule 12(b)(5) challenge to the sufficiency of service of process, the

plaintiff bears the burden of proving its adequacy."  *Mende*, 269 F. Supp. 2d at 251 (internal

quotation marks omitted).  Thus, because Plaintiffs have failed to provide proof that the

Summons, Complaint, and Amended Complaint were served on the Defendants, I could dismiss

the action or grant leave for Plaintiffs to properly serve Defendants.  I would, in the interest of

deciding the case on its merits, follow the latter course if any of Plaintiffs' claims survived, but

as discussed below, they do not.[8]

### D.      K&B Defendants Are Not State Actors

The K&B Defendants argue that they are not state actors, and thus not subject to liability

under § 1983.  (K&B Ds' Mem. at 11-16.)  "'Because the United States Constitution regulates

only the Government, not private parties, a litigant claiming that his constitutional rights have

been violated must first establish that the challenged conduct constitutes state action.'"

*Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (quoting *Flagg v. Yonkers Sav. & Loan

Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005)).  Thus, as the plain language of § 1983 indicates,

---

[7] I may take judicial notice of documents filed (or not filed) in another court to establish the fact of such litigation and filings (or lack thereof).  *See Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006).

[8] To the extent the Court allows Plaintiffs to file a Second Amended Complaint, it and the summonses must be properly served on all Defendants.

§ 1983 liability may be imposed only upon wrongdoers "who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (internal quotation marks omitted); *see, e.g.*, *Singletary v. Chalifoux*, No. 13-CV-4205, 2013 WL 5348306, at *2 (E.D.N.Y. Sept. 23, 2013) ("Section 1983 constrains only state conduct, not the acts of private persons or entities.") (internal quotation marks omitted).

The conduct of a private party may constitute state action if it is "'so entwined with governmental policies or so impregnated with a governmental character that it can be regarded as governmental action.'" *Fabrikant*, 691 F.3d at 206-07 (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 847 (1982)); *see, e.g.*, *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) ("Anyone whose conduct is fairly attributable to the state can be sued as a state actor under [Section] 1983.") (internal quotation marks omitted). But "a private entity does not become a state actor for purposes of [Section] 1983 merely on the basis of 'the private entity's creation, funding, licensing, or regulation by the government.'" *Fabrikant*, 691 F.3d at 207 (quoting *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 112 (2d Cir. 2003)). "Rather, 'there must be such a close nexus between the [s]tate and the challenged action' that the state is '*responsible* for the specific conduct of which the plaintiff complains.'" *Id.* (alterations and emphasis in original) (quoting *Cranley*, 318 F.3d at 111).

In particular, the Second Circuit has recognized "[t]hree main tests" to determine whether the conduct of a private party constitutes state action: (1) whether "the entity acts pursuant to the coercive power of the state or is controlled by the state ('the compulsion test');" (2) whether "the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ('the joint action

test' or 'close nexus test');" or (3) whether "the entity has been delegated a public function by the state ('the public function test')." *Id.* (citations omitted). In determining whether a private party has acted under color of state law, the Second Circuit considers "the specific conduct of which the plaintiff complains, rather than the general characteristics of the entity." *Id.* (citations and internal quotation marks omitted); *see Bodmann v. JPMorgan Chase Bank, N.A.*, No. 14-CV-833, 2014 WL 3058551, at *3 (E.D.N.Y. July 7, 2014).

Plaintiffs argue that the K&B Defendants "willfully participated in 'joint activity' to violate" their rights by conveying the District's prohibitions, (Ps' K&B Opp. at 8-9), or conspired to do so, (*id.* at 9). But "[t]he conduct of an attorney acting in his professional capacity while representing his client does not constitute action under color of state law for the purposes of § 1983," even if the client is a state actor. *Goetz v. Windsor Cent. Sch. Dist.*, 593 F. Supp. 526, 528 (N.D.N.Y. 1984); *see Beedle v. Wilson*, 422 F.3d 1059, 1073 (10th Cir. 2005) (same); *Luo v. Baldwin Union Free Sch. Dist.*, No. 12-CV-3073, 2013 WL 1182232, at *4 (E.D.N.Y. Mar. 21, 2013) ("To the extent that Plaintiff's claims against Gibson arise out of her legal advice to Gallo or in her role as advocate for the District, Gibson was not acting under color of state law.").

Here, Plaintiffs have failed to allege that the K&B Defendants were doing anything other than acting in their capacity as counsel for the District Defendants. And while Plaintiffs try to distinguish *Goetz* from the instant case, arguing that the lawyers there were merely giving legal advice as opposed to the "far more extensive" role the K&B Defendants played here, they provide no citations to the Amended Complaint or case law for this proposition. (P's K&B Opp. at 9.) Indeed, as in *Goetz*, "[t]here is no allegation that [D]efendant[s] [Roebuck and K&B]

ha[ve] a direct interest in this lawsuit or that [they] w[ere] acting in any capacity other than as a privately retained attorney" for a school district. *Goetz*, 593 F. Supp. at 528-29.

Nor does the allegation of a conspiracy save Plaintiffs' claim.[9] Plaintiffs' only support in the Amended Complaint for this proposition is that the K&B Defendants issued the Letter to Plaintiffs "on behalf of the School and [the District Defendants]." (AC ¶ 38.) But "an attorney representing a client cannot conspire within the attorney-client relationship." *Hanifee v. Bd. of Educ. of Kent Cty.*, No. 09-CV-2381, 2010 WL 723772, at *7 (D. Md. Feb. 24, 2010) ("[A]ttorneys were not acting 'under color of state law' merely because they provided legal services to the Board, and . . . were incapable of conspiring with other state actors."). That Roebuck and K&B sent the Letter with the District's authorization, (AC ¶¶ 38-42), thus does not suffice to make a conspiracy allegation plausible so as to render them state actors. *See Beedle*, 422 F.3d at 1073 (facts showing private attorney acting in professional capacity representing state actor are insufficient to plausibly allege conspiracy).

Thus, all claims against the K&B Defendants are dismissed.

### E.      Statute of Limitations

Defendants argue that Plaintiffs' First Amendment retaliation and Fourteenth Amendment due process claims are time-barred because the continuing violation doctrine does not apply, and the April 11, 2013 Letter was sent outside the three-year statute of limitations for § 1983 claims. (Dist. Ds' Mem. at 4-5.)

---

[9] "Allegations of a conspiracy to violate civil rights must be pleaded with specificity, and an otherwise invalid § 1983 claim cannot survive a motion to dismiss merely by mentioning the word 'conspiracy.'" *Scalpi v. Town of E. Fishkill*, No. 14-CV-2126, 2016 WL 858925, at *5 (S.D.N.Y. Feb. 29, 2016) (alterations, citation, and internal quotation marks omitted). "Rather, a plaintiff must allege: '(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.'" *Id.* (quoting *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002)). Here, as in *Luo*, "[t]o the extent Plaintiff[s] claim[] that [Roebuck and K&B] conspired to deny Plaintiff[s] of [their] rights, [their] [c]omplaint contains only conclusory allegations of conspiracy, which are insufficient to overcome a motion to dismiss." 2013 WL 1182232, at *4; *see Scalpi*, 2016 WL 858925, at *5.

"The statute of limitations for actions under § 1983 is the statute of limitations applicable to personal injury actions occurring in the state in which the federal court sits." *Harris v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, 230 F. Supp. 3d 88, 97 (E.D.N.Y. 2017) (internal quotation marks omitted); *see Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015). New York provides a three-year statute of limitations for personal injury claims. N.Y. C.P.L.R. § 214(5). Thus, the statute of limitations for a § 1983 claim in this District is three years. *See Owens v. Okure*, 488 U.S. 235, 251 (1989). "[W]hen a plaintiff knows or ought to know of a wrong, the statute of limitations on that claim starts to run . . . ." *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995).

Plaintiffs filed their Summons and Notice on May 20, 2016 in state court, (*see* Doc. 1 Ex. A), which renders any claims arising before May 20, 2013 untimely, absent some exception. Plaintiffs do not contest that the three-year statute of limitations applies, but argue that the claims arising from the Letter, which was sent on April 11, 2013, are not time-barred because they are subject to the continuing violation doctrine. (Ps' Dist. Opp. at 9-11.)

"The continuing violation doctrine allow[s] all claims resulting from a discriminatory policy or practice to be considered timely, even if untimely standing alone." *Plumey v. New York State*, 389 F. Supp. 2d 491, 498 (S.D.N.Y. June 15, 2005). "[T]o assert a continuing violation, a plaintiff must establish both (1) a policy or practice which caused the alleged discrimination, and (2) that the timely claim is continuous in time with the untimely claims," *id.* – in other words, that the "specific and related instances of discrimination are permitted . . . to continue unremedied for so long as to amount to a discriminatory policy or practice," *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998) (internal quotation marks omitted), *abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101

(2002); *see Fitzgerald v. Henderson*, 251 F.3d 345, 363 (2d Cir. 2001) (finding continuing

violation where there is a "constant stream" of almost daily abuse with "no interruption"). "The

mere fact that wrongful acts may have a continuing impact is not sufficient to find a continuing

violation." *Rebrovich v. Cty. of Erie*, 544 F. Supp. 2d 159, 170 (W.D.N.Y. 2008).

The Letter itself is a discrete act not subject to the continuing violation doctrine. *See,

e.g.*, *Troeger v. Ellenville Cent. Sch. Dist.*, 523 F. App'x 848, 851 (2d Cir. 2013) (summary

order); *Andrews v. Town of Wallingford*, No. 16-CV-1232, 2017 WL 3588571, at *3 (D. Conn.

Aug. 21, 2017). Plaintiffs argue that the May 23, 2013 voting incident is timely, (Ps' Dist. Opp.

at 10), but that incident was plainly an effect of the April 11, 2013 Letter, not evidence of a

continuing violation. *See Harris v. City of N.Y.*, 186 F.3d 243, 250 (2d Cir. 1999) ("[A]

continuing violation cannot be established merely because the claimant continues to feel the

effects of a time-barred discriminatory act.").[10] Thus, to the extent that Plaintiffs are arguing that

the Letter and its limitations on Plaintiff Parents' presence at the School and communication with

the District and its employees were retaliatory, claims based on that specific injury are time-

barred.

Plaintiffs mention another injury in their Amended Complaint, however, that might

support a First Amendment retaliation claim and seemingly would be timely: that Roebuck and

K&B failed to contact Plaintiff Parents to inform them of school events "involving other parents

or to provide guidance as to how their presence would be arranged at these events, resulting in

plaintiff guardians being barred and prohibited from attending every school held event involving

---

[10] It also was not plausibly retaliatory, given that it was clearly an error by the security guards that was promptly
rectified by Defendants, and because the harm Plaintiffs suffered – not being able to vote – was by their own
account the result of a choice they made, (AC ¶ 49), not any prohibition by Defendants.

. . . their sons" for a period of twenty-seven months. (AC ¶ 43.)[11] Thus, if Plaintiffs can in good

faith amend to allege such a claim, they may do so (as further discussed below).

## F. Due Process and Disparate Treatment Claims

Even if Plaintiffs' due process and disparate treatment claims were not dismissed as

untimely, Plaintiffs have failed a state a claim for both. "To state a due process violation –

procedural or substantive – Plaintiff[s] must first show a deprivation of a constitutionally

protected property or liberty interest." *Perez v. Metro. Transp. Auth.*, No. 11-CV-8655, 2012

WL 1943943, at *8 (S.D.N.Y. May 29, 2012) (internal quotation marks omitted); *see White*

*Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1061-62 (2d Cir. 1993) (addressing procedural

due process). Plaintiffs have failed to allege any deprivation of a constitutionally protected

property or liberty interest. First, "[i]t is well-established that school authorities have the right to

limit access to school property, and the courts afford great deference to their decisions to do so."

*Burke v. Cicero Police Dep't*, No. 07-CV-624, 2010 WL 1235411, at *3 (N.D.N.Y. Mar. 31,

2010) (finding order forbidding legal guardian from entering school grounds failed to implicate

constitutional deprivation); *see Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Educ.*, 42 F.3d

719, 724 (2d Cir. 1994) ("[O]rder forbidding [Board of Education member] from entering the

school grounds . . . fails to implicate a protected liberty or property interest."); *Eskenazi-*

*McGibney v. Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 230 (E.D.N.Y. 2015) ("[P]arents

do not enjoy a protected liberty or property interest in unfettered access to their child's school

grounds.") (collecting cases). Second, insofar as Plaintiffs are arguing that the Letter deprived

them of their right to participate in their sons' education, Plaintiffs have alleged no facts

---

[11] Plaintiffs do not raise this argument in their brief and do not seem to articulate this theory in their Amended
Complaint, but the facts could plausibly support such a theory, as discussed in more detail below.

rendering such a conclusion plausible. The Letter did not forbid them from participating in their sons' education, but only required that communications go through the K&B Defendants, and Plaintiffs provide not a single example of an education-related concern they were unable to raise or as to which they received no response.

With respect to the disparate treatment claim, it is unclear exactly what kind of claim Plaintiffs are alleging. Defendants are correct that disparate treatment is not an element of a First Amendment retaliation claim. *See Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (laying out elements of First Amendment retaliation claim). To the extent Plaintiffs seek to use evidence of disparate treatment as evidence of retaliation, they have put forth no facts showing how Defendants treated other similarly situated parents, leaving the Court no way to determine whether the treatment of Plaintiffs was "disparate." To the extent Plaintiffs intend to bring an equal protection claim in that they were singled out for mistreatment based on their exercise of their First Amendment right, such a claim coalesces with their First Amendment retaliation claim, *see Heusser v. Hale*, 777 F. Supp. 2d 366, 385 (D. Conn. 2011), and would be dismissed as duplicative in any event.[12]

## G. "Right to Education" Claim

### 1. Exhaustion of Administrative Remedies

Defendants argue that Plaintiff's fourth claim – for "violation of W.C.'s constitutional right to an equal education by the failure to protect him" – should be dismissed because the claim can only be properly construed as a claim under the Individuals with Disabilities in Education

---

[12] Insofar as Plaintiffs intend to bring a "class of one" equal protection claim, it would fall short for failure to plausibly allege that others with an "extremely high" level of similarity were treated differently. *Pape v. Bd. of Educ. of the Wappingers Cent. Sch. Dist.*, No. 07-CV-8828, 2009 WL 3151200, at *6 (S.D.N.Y. Sept. 29, 2009) (first quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); then quoting *Rafano v. Patchogue-Medford Sch. Dist.*, No. 06-CV-5367, 2009 WL 789440, at *5 (E.D.N.Y. Mar. 20, 2009)).

Act ("IDEA"), and thus Plaintiffs were required to exhaust their administrative remedies, which they failed to do. (Dist. Ds' Mem. at 11-14.) Plaintiffs respond that "the allegations are that [P]laintiff W.C.'s rights were violated by the failure to protect him from physical harassment at school. That is neither a [Free Appropriate Public Education, or "FAPE"] nor an IDEA complaint." (Ps' Dist. Opp. at 15.)

In *Fry v. Napoleon Community Schools*, 137 S. Ct. 743 (2017),[13] the Supreme Court set forth a framework for determining whether or not a claim involving a student with a disability seeks relief under the IDEA, requiring an exhaustion of administrative procedures. *See id.* at 752. The Court reasoned:

> If a lawsuit charges . . . a denial [of a FAPE], the plaintiff cannot escape [the IDEA] merely by bringing her suit under a statute other than the IDEA . . . . Rather, that plaintiff must first submit her case to an IDEA hearing officer, experienced in addressing exactly the issues she raises. But if, in a suit brought under a different statute, the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required. . . . And that is true even when the suit arises directly from a school's treatment of a child with a disability – and so could be said to relate in some way to [his] education. A school's conduct toward such a child – say, some refusal to make an accommodation – might injure her in ways unrelated to a FAPE, which are addressed in statutes other than the IDEA.

*Id.* at 754.

Here, the gravamen of Plaintiffs' Amended Complaint is that the School and the District failed to protect W.C., which "resulted in the denial of . . . an opportunity to an equal education due to his disability by [the Defendants'] failure to insure that he could be taught within a safe environment with due consideration of his disabilities." (AC ¶ 69.) While this assertion is

---

[13] *Fry* was decided on February 22, 2017. Neither of Plaintiffs' opposition memoranda dated March 8, 2017 nor Defendants' reply memoranda dated March 22, 2017 cited to it. At the pre-motion conference on November 2, 2016 (Minute Entry dated Nov. 2, 2016), I mentioned that there was a pending case in the Supreme Court regarding this exact issue, and the District Defendants' counsel assured me that they would look into it. In the future, counsel are advised to track and incorporate new and on-point case law, particularly when it is specifically suggested by the Court that they do so.

admittedly confusing, Plaintiffs' Amended Complaint as a whole sounds in a concern that the Defendants failed to protect W.C. from harassment and bullying by another student, not that Plaintiff Parents were displeased with W.C.'s IEP or were seeking changes to it. Indeed, the Amended Complaint's recitation of the facts begins with the history between W.C. and L.C., Desuza's alleged failure to address L.C.'s behavior, and W.C.'s subsequent "stress and trauma." (*Id.* ¶ 31; *see id.* ¶¶ 22-36.) The Letter, which seems to be the primary basis for Plaintiffs' suit, was sent in response to previous correspondence between Plaintiff Parents and the District regarding L.C.'s bullying of W.C. and the Parents' perception that the Defendants were failing to take action. (*See* Letter at 2.) Thus, Plaintiffs' "claims could have brought in a situation in which there is no obligation to provide a FAPE," *Bowe v. Eau Claire Area Sch. Dist.*, No. 16-CV-746, 2017 WL 1458822, at *5 (W.D. Wis. Apr. 24, 2017), as W.C. could have been bullied, and the District could have failed to address it, notwithstanding his disability. Because Plaintiffs do not seek relief for the denial of a FAPE, Plaintiffs need not have exhausted the IDEA's administrative procedures before filing suit.

2.      *Failure to Protect Claim*

Because Plaintiffs' fourth claim does not sound in the IDEA, the case must be analyzed under some other standard, but neither party suggests one, and the exact parameters of Plaintiffs' claim are unclear. On the one hand, the allegations in the Amended Complaint suggest that it is a negligence claim – that the District failed to protect W.C. from harassment and bullying. But it is well settled that "schools do not owe a duty to protect students from harm from fellow students

. . . ." *Faccio v. Eggleston*, No. 10-CV-699, 2011 WL 3666588, at *13 (N.D.N.Y. Aug. 22, 2011) (collecting cases).

On the other hand, a claim regarding a school's failure to protect a student from bullying and harassment may be brought as a violation of the Substantive Due Process Clause of the Fourteenth Amendment. *See, e.g.*, *S.C. v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-1672, 2012 WL 2940020 (S.D.N.Y. July 18, 2012). While children W.C.'s age have a property interest in a public education protected by the Fourteenth Amendment, *see Handberry v. Thompson*, 446 F.3d 335, 353 (2d Cir. 2006); *S.C.*, 2012 WL 2940020, at *6, Plaintiffs have not alleged facts suggesting that their son did not receive a public education from Defendants, *see S.C.*, 2012 WL 2940020, at *6 (noting that because the defendants did not suspend student, they did not deprive him of his property interest); *Saggio v. Sprady*, 475 F. Supp. 2d 203, 210 (E.D.N.Y. 2007) ("[T]he District did not exclude [the student] from attending school. It thus cannot be said that the District infringed upon her right to an education."), nor have they alleged conduct by Defendants so egregious as to rise to the level of a substantive due process violation, *see H.B. v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-5881, 2012 WL 4477552, at *12-13 (S.D.N.Y. Sept. 27, 2012) (collecting cases); *Chambers v. N. Rockland Cent. Sch. Dist.*, 815 F. Supp. 2d 753, 770-71 (S.D.N.Y. 2011); *Risica ex rel. Risica v. Dumas*, 466 F. Supp. 2d 434, 440 (D. Conn. 2006).

Finally, Plaintiffs' Amended Complaint does not set forth facts showing that Defendants were deliberately indifferent to the bullying of W.C., as opposed to negligent, "which cannot give rise to a deprivation of a property interest." *S.C.*, 2012 WL 2940020, at *6 (citing *Grune v. Rodriguez*, 176 F.3d 27, 33 (2d Cir. 1999)). Accordingly, Plaintiffs have failed to state a claim

that Defendants violated W.C.'s "constitutional rights to an equal education by the failure to protect him," regardless of what legal framework is applied.[14]

### H.     First Amendment Retaliation

The only remaining claim is whether Defendants impermissibly retaliated against Plaintiffs' exercise of their First Amendment rights.[15]

Before turning to the substantive claim, I must first address whether, as Defendants argue, (Dist. Ds' Mem. at 10-11), Plaintiffs have failed to allege *Monell* liability and personal involvement of the individual Defendants.

A school district may only face liability under § 1983 for constitutional violations pursuant to the well-established doctrine of municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). *See Lopez v. Bay Shore Union Free Sch. Dist.*, 668 F. Supp. 2d 406, 417 (E.D.N.Y. 2009) (applying *Monell* in the context of a school's liability under § 1983). Municipal liability under § 1983 requires a showing of a policy or custom. *Monell*, 436 U.S. at 694. Such a "policy or custom . . . need not be contained in an explicitly adopted rule or regulation." *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992). But "a conclusory allegation that [official] conduct constituted a custom, usage, practice, procedure or rule that deprived [plaintiff] of his constitutional rights [is not] sufficient to state a claim for municipal liability." *Byrd v. Metro. Transit Auth.*, No. 15-CV-1364, 2015 WL 4546718, at *3 (E.D.N.Y. July 28, 2015); *see Guzman v. United States*, No. 11-CV-5834, 2013 WL 5018553, at *6 (S.D.N.Y. Sept. 13, 2013) ("[M]erely recit[ing], without factual

---

[14] In any event, to the extent Plaintiffs were seeking relief under § 1983, those claims would be barred by the statute of limitations because Plaintiffs make no allegations regarding bullying that occurred after May 20, 2013.

[15] Plaintiffs state in their Amended Complaint that Defendants violated Plaintiffs' First and Fourteenth Amendment rights in denying Plaintiffs their right to vote. Plaintiffs fail to elaborate as to how these facts could form a basis for a Fourteenth Amendment claim. To the extent that they do, I have already discussed why Plaintiffs do not have a claim under the Fourteenth Amendment, and need not do so again here.

support, that the threats . . . to which [Plaintiffs were] subjected are the products of an unofficial policy, carried out by" school officials is not enough.). "[A] custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere [government] employee," *Newton v. City of N.Y.*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008), but a municipality may still be subject to *Monell* liability if a constitutional deprivation was caused by a person acting with final decision or policy-making authority on behalf of the municipality, *see Lozman v. City of Rivera Beach*, 39 F. Supp. 3d 1392, 1403 (S.D. Fla. 2014); *Harvey v. City of Bradenton*, No. 04-CV-1748, 2005 WL 3533155, at *10 n.10 (M.D. Fla. Dec. 22, 2005) (collecting cases).

Plaintiffs argue that because the April 11, 2013 Letter was sent "on behalf of the District" and articulated "the policy banning [P]laintiffs from the school, denying communications with teachers and faculties," it constituted board policy under *Monell*. (Ps' Dist. Opp. at 14.) But because any claims based the Letter are barred by the statute of limitations, the Letter itself cannot form the basis of *Monell* liability. Moreover, the May 23, 2013 voting incident was a single occurrence – seemingly a mistake that was promptly corrected – that was not the result of a policy, custom, or decision by a policymaker.

If Plaintiffs could plausibly allege that the District engaged in a policy or custom of failing to notify Plaintiff Parents of events for a period of twenty-seven months, they could plausibly plead municipal liability under *Monell*.[16] Plaintiffs have not made clear in their Amended Complaint, however, under what theory they seek to hold the School and the District

---

[16] One of the documents I cannot consider on this motion, Exhibit B to the Silverman Declaration, suggests that Plaintiff Parents attended meetings and school events between April 2014 and June 2015. If that is so, it would undermine a theory that Defendants retaliated against Plaintiff Parents by not informing them of school events. To show a policy, Plaintiffs would have to show, among other things, that Plaintiff Parents were not informed of school events and that this failure was attributable to a Defendant and not the result of negligence. *See Cash v. Cty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) ("The operative inquiry is whether th[e] facts [in the complaint] demonstrate that the policymaker's inaction was the result of 'conscious choice' and not 'mere negligence.'").

liable – that is they have not alleged a policy or custom or suggested who was responsible for it. As discussed further below, Plaintiffs will be given an opportunity to amend to address these issues.

If Plaintiffs are able to provide facts plausibly alleging a policy or custom of failing to notify Plaintiff Parents of school events, they must also provide additional facts to allege a plausible First Amendment retaliation claim. In the Second Circuit, the elements of a First Amendment retaliation claim are dependent on the "factual context" of the case before the district court. *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008). In the context of a private citizen's action against public officials, the plaintiff must show that: "(1) [plaintiff] has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by [plaintiff's] exercise of that right; and (3) defendants' actions effectively chilled the exercise of [plaintiff's] First Amendment right," *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001), or caused plaintiff to suffer some other concrete harm, *Dorsett*, 732 F.3d at 160.

"On a motion to dismiss, a reasonable inference of a causal connection is all that is required." *Morey v. Somers Cent. Sch. Dist.*, No. 06-CV-1877, 2007 WL 867203, at *11 (S.D.N.Y. Mar. 21, 2007). "This can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." *Id.* (internal quotation marks omitted). "Temporal proximity is strong circumstantial evidence of improper intent." *Fierro v. City of N.Y.*, 591 F. Supp. 2d 431, 444-45 (S.D.N.Y. 2008), *rev'd in part on other grounds*, 341 F. App'x 696 (2d Cir. 2009).

Plaintiffs correctly argue that they have a protected First Amendment interest in filing the police report regarding L.C.'s bullying and the District's failure to protect W.C. (Ps' Dist. Opp. at 12-13.) *See Estate of Morris ex rel. Morris v. Dapolito*, 297 F. Supp. 2d 680, 692 (S.D.N.Y. 2004) ("The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment."). The Amended Complaint as currently pleaded does not provide sufficient information regarding the timing of the alleged failure to inform Plaintiff Parents of school events to give rise to an inference of retaliation. The Letter states that Plaintiff Parents could attend the spring concert and the moving-up ceremony at the end of 2013, and does not specify any events from which they were specifically barred, other than to generally state that they were barred from School property, except in limited instances. (Letter at 2-3.) The Amended Complaint does not provide examples of events after the 2012-2013 school year of which Plaintiff Parents were not notified, only that Roebuck and K&B did not contact them about future events "for a period of 27 months" after the Letter was sent. (AC ¶ 43.) Plaintiffs do not allege that nobody contacted them or that they were prevented from attending school events (although they may be able to do so). Accordingly, if they can do so in good faith, Plaintiffs may amend their complaint to include additional facts supporting a First Amendment retaliation claim under the theory that a specified Defendant or Defendants failed to notify Plaintiff Parents of school events for a period of twenty-seven months.

As to the individual Defendants' liability, a person cannot be held liable for violations of § 1983 unless he or she was personally involved in the alleged constitutional deprivation. *See Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010). Defendants argue that Plaintiffs fail to allege personal involvement of the individual Defendants in the alleged constitutional violations. (Dist. Ds' Mem. at 11.) In response, Plaintiffs point to three paragraphs in the Amended Complaint,

wherein they alleged that it was "'retaliation that all [D]efendant teachers engaged in by accepting the terms of the [L]etter,'" and that in the context of the First Amendment retaliation claim in particular, their rights were violated with the "'consent, authorization and acquiescence of'" the individual Defendants. (Ps' Dist. Opp. at 17 (quoting AC ¶¶ 55, 57, 61).)

Allegations of personal involvement in formulating and sending the Letter are not relevant to the remaining claims as they are barred by the statute of limitations. With respect to the May 23, 2013 voting incident that is the basis for Plaintiffs' first claim as it currently exists, there are no allegations that any of the individual Defendants were involved in any way. Plaintiffs allege that when they arrived at the School on May 23, 2013, security guards – not any of the named Defendants – "intercepted them, ordered them off the premises, escorted them from the school property . . . and threatened them with arrest should they return." (AC ¶ 47.) Plaintiffs further allege that "later that day," the K&B Defendants – who are not state actors and thus are not subject to suit under § 1983 as previously discussed – notified Plaintiffs that they could return. (*Id.* ¶ 49.) These two allegations alone do not render plausible the conclusion that any of the individual Defendants consented to, authorized, or acquiesced in the alleged denial of Plaintiffs' voting rights. Indeed, there are no allegations that that the security guards were acting on behalf of any of the individual Defendants, that the individual Defendants were present at the School on May 23, 2013, or that they had planned to deny Plaintiffs their voting rights. Accordingly, the individual District Defendants cannot be held liable for First Amendment retaliation under § 1983, unless Plaintiffs provide facts implicating an individual Defendant in a decision not to notify Plaintiff Parents of school events.

## III. LEAVE TO AMEND

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs have already amended once, (*see* Doc. 12), after a conference at which Defendants' potential motions were discussed, (Minute Entry dated Nov. 2, 2016). Plaintiffs have not asked to amend again or otherwise suggested they are in possession of facts that would cure the deficiencies identified in this opinion. Accordingly, except as noted above, the Court declines to grant leave to amend *sua sponte*. *See TechnoMarine SA v. Giftports, Inc*., 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where "request gives no clue as to how the complaint's defects would be cured") (internal quotation marks omitted).

## IV.     CONCLUSION

For the reasons stated above, the motions to dismiss of the District Defendants, (Doc. 17), and the K&B Defendants, (Doc. 25), are GRANTED.  The Clerk of Court is respectfully direct to terminate the pending motions.  (Docs. 17, 21.)  Plaintiffs have leave to replead only their First Amendment retaliation claim as it relates to the alleged failure to notify them as to when and how to attend school events.  The case will be closed if no Amended Complaint is submitted by November 4, 2017.

**SO ORDERED.**

Dated: October 16, 2017
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.